## MONTGOMERY COUNTY BAR ASSOCIATION, INC. *v.* HAUPT

[Misc. Docket (Subtitle BV) No. 13, September Term, 1975.]

*Decided March 15, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Bruce Widenor Haupt*, respondent.

*Thomas L. Craven* and *Reginald W. Bours, III*, for Bar Association.

ORDER OF COURT.

### O R D E R

The Court having considered the Findings and

Recommendation of the majority and dissenting members of the panel of judges, the exceptions thereto filed by the Respondent and by the Montgomery County Bar Association, the answers thereto filed by the respective parties, and arguments of counsel, and the Court having further considered the Motion to Tax Costs filed by the Montgomery County Bar Association and the Motion to Tax Costs and For Attorneys Fees filed by the Respondent, it is this 15th day of March, 1976

ORDERED, by the Court of Appeals of Maryland, that the findings and the recommendation of the majority of the panel of judges as to the Juvenile matter be, and they are hereby, adopted; and it is further

ORDERED that the findings of fact of the panel of judges with respect to the Clem matter be, and they are hereby, adopted, and that the recommendation of the panel that Respondent be suspended from the practice of law for one year is not adopted; and it is further

ORDERED that, accepting the findings of fact of the panel of judges with respect to the Clem matter, the Respondent, Bruce Widenor Haupt, be, and he is hereby, suspended from the practice of law in the State of Maryland for a period of thirty days to begin April 14, 1976; and it is further

ORDERED, pursuant to the provisions of Rule BV15 a, that the Attorney Grievance Commission pay the sum of two thousand three hundred seventy-two dollars and fifty cents, ($2,372.50) to John W. Whitman, Court Reporter, and that the Respondent and Montgomery County Bar Association pay the costs and expenses respectively incurred by each in these proceedings; and it is further

ORDERED that Respondent's motion for payment of Attorneys' Fees is denied.

### FINDINGS AND RECOMMENDATION
### OF PANEL

This matter is before the Court, sitting as a three Judge panel by designation of the Chief Judge of the Court of Appeals, to hear and make recommendations with respect to

certain charges brought by the petitioner against the respondent as a member of the Maryland Bar and a practicing attorney within the State. Disciplinary sanctions are sought in accordance with the provisions of the BV Rules.

The respondent is charged in two separate instances involving two separate complainants. The first will be referred to as the Juvenile * matter and the second as the Clem matter.

With respect to the Juvenile matter, the respondent is charged with acts constituting

a. Conduct involving dishonesty, fraud, deceit and misrepresentation;

b. Conduct prejudicial to the administration of justice;

c. Conduct that adversely reflects on his fitness to practice law.

All of the alleged conduct is claimed to be in violation of Canon 1 of the Code of Professional Responsibility and Disciplinary Rule 1-102 (A). The misconduct alleged is set forth in the petition as consisting of the following specific activities:

1. The respondent is charged "in approximately between June and October 1973" with picking up the Juvenile, a girl 16 years of age, who was hitchhiking in Montgomery County, Maryland, and that while in respondent's automobile, the Juvenile and the respondent, at the suggestion of the respondent, smoked marijuana cigarettes furnished by the respondent, and that the respondent then took the Juvenile to an apartment in Silver Spring, Maryland, where he attempted to take sexual liberties with her, and that on several occasions during the following year, respondent telephoned the Juvenile and was informed by her of her desire to be emancipated and removed from the jurisdiction of the Juvenile Court for Montgomery County, Maryland.

---

* The name of the juvenile will not be stated but will be referred to as the Juvenile.

2. That on or about July 3, 1974 the respondent procured his appointment by the District Court of Maryland, sitting as a Juvenile Court, as guardian ad litem of the Juvenile.

3. That on or about July 4, 1974 the respondent visited the Juvenile in Prince George's County Hospital where she was recuperating from an appendix operation and there attempted to take sexual liberties with her.

4. That on or about August 6, 1974 the respondent went to the apartment occupied by the Juvenile and produced a substance which he identified as hashish which, at his urging, was smoked by the Juvenile and the respondent and that thereafter, on the same date, respondent assaulted the Juvenile and attempted to have sexual relations with her against her will and that when she resisted the respondent threatened to have her re-committed by the Juvenile Court unless she cooperated.

With respect to the Clem matter, the respondent is charged with conduct constituting

a. Knowing engagement in illegal conduct and conduct contrary to Canon 7 of the Code of Professional Responsibility and Disciplinary Rule 7-102 (A) (8).

b. Communication with a party he knew to be represented by a lawyer on the subject covered by that representation without the prior consent of that lawyer in violation of Canon 7 of the Code of Professional Responsibility and Disciplinary Rule 7-104 (A) (1).

c. Conduct adversely reflecting on respondent's fitness to practice law and prejudicial to the administration of justice in violation of Canon 1 of the Code of Professional Responsibility and Disciplinary Rule 1-102 (A).

The allegations with respect to these charges assert that on or about February 20, 1975 the respondent, while representing Patricia M. Clem, in a domestic relations matter, committed an assault upon Charles E. Clem, Patricia's estranged husband, damaged his automobile, chased him at high and dangerous speeds over the public roads of Montgomery County and engaged in communications with the said Charles E. Clem regarding

the litigation between Mr. Clem and his wife, Patricia, with full knowledge that the said Charles E. Clem was represented by an attorney in that litigation.

Testimony was offered and evidence presented by the petitioner in respect to both the foregoing episodes. The respondent presented evidence only in the Juvenile matter. The panel will discuss each of these two matters separately.

## THE JUVENILE MATTER

Petitioner's evidence consisted of the testimony of the Juvenile, Judge Leonard Rubin of the Montgomery County Juvenile Court, the Juvenile's father, . . . , and several other witnesses. From this testimony it is apparent to a majority of this panel that the validity of the petitioner's charges with respect to the specifically alleged episodes involving the Juvenile, depends almost entirely upon the unsupported testimony of the Juvenile herself. The witnesses produced by the petitioner to corroborate the Juvenile's evidence either did not, in fact, provide that corroboration or testified in contradiction to some of her assertions and, in fact, in at least two instances tended to corroborate the respondent's version of what occurred.

Against this testimony, the respondent produced disinterested witnesses who testified as to the respondent's activities on the day of the hitchhiking episode which made it impossible for the respondent to have been where the petitioner charges him with having been on that day. In addition, the respondent produced the hospital roommate of the Juvenile, again a disinterested witness, whose testimony accounted for nearly all of the time the Juvenile was in her hospital room and who was there when the respondent visited the Juvenile at the times the petitioner charges improper conduct. This witness neither saw nor heard any improper conduct by the respondent. With respect to the episodes occurring at the Juvenile's apartment in August of 1974, the respondent produced a corroborating witness whose testimony supported the respondent's version of the events of that day. Finally, respondent produced witnesses who were acquainted with the Juvenile through the Juvenile

Court, and who had dealt with her personally either as social workers or supervisors of a facility at which the Juvenile had stayed. These witnesses testified that the Juvenile was not a truthful person.

Without going into particular detail on each and every one of the episodes related and each and every portion of the testimony adduced, suffice it to say that, taking into consideration the patent inconsistencies and discrepancies in the Juvenile's testimony and the lack of corroboration as to many of the material elements of her story, together with the denials and explanations of the respondent corroborated by independent, disinterested witnesses in many particulars, the majority of the panel is not persuaded that the petitioner has proven the specifications charged by the clear and convincing evidence required by the law applicable to disciplinary proceedings. Accordingly, the panel recommends that the charges arising out of the Juvenile's episodes be dismissed.

However, notwithstanding this recommendation, the panel cannot leave this matter without commenting on the general impression left by the respondent with regard to the Juvenile's stewardship. Respondent is a young attorney and the complainant was an attractive young girl, mature far beyond her years, who had a history of juvenile difficulties with her family and with the juvenile authorities and whose reputation among those who dealt with her and knew her was one of untruthfulness and unreliability. Against this background, it would appear that the respondent showed an inordinate interest in the Juvenile's personal life and conducted himself in his dealings with her in a grossly offensive manner. His lack of candor when interrogated by the petitioner's grievance committee, his gross and vulgar references and insinuations in the presence of the Juvenile and her friends and even her father, all are indicative of an attitude which hardly bespeaks the standards expected of a member of the bar in dealing with his client or ward. Nevertheless, the petitioner has chosen to limit its charges to the detailed and specific episodes set forth in the petition. No amendments have been proffered either to add further

acts or to broaden the allegations to include, more generally, respondent's conduct with the Juvenile. The majority of the panel believes it must make its determination on the basis of the allegations which the respondent has been compelled to answer for and defend against. See *Bar Ass'n v. Cockrell*, 270 Md. 686 (1974).

## THE CLEM MATTER

Turning now to the Clem matter, the situation is entirely different. In this matter the evidence presented by the petitioner as regards the happening of the episode and the part played by the Clems and the respondent was undisputed by the respondent. He presented no testimony in opposition to the petitioner's evidence which was offered through Mr. and Mrs. Clem, a police officer and a corroborating witness named Weakley. This testimony disclosed that at the time of the episodes in question the complainant, Charles E. Clem, and his wife, Patricia M. Clem, had been separated for a period of several weeks. Mrs. Clem was represented by the respondent and Mr. Clem was represented by John S. McInerney, Esq., a member of the bar practicing in Montgomery County. On the evening of February 20, 1975, Mr. Clem decided he would like to persuade his wife to switch cars. When they had separated she had taken a 1973 Mercury Capri and left him with a 1967 Chevrolet stationwagon. He called his wife to arrange this switch but she refused. Both cars were owned jointly by the parties. Clem, accompanied by Weakley, then went to his wife's house and attempted to leave the stationwagon and take the Capri. He found the Capri, got into it, started it up and was leaving when a man came running out of the house, subsequently identified as the respondent. The testimony was that the respondent then kicked the driver's side door of the Capri and when the car did not stop, the respondent got in his own car, a Datsun, and followed. A high speed chase then ensued out Georgia Avenue, across Randolph Road, Layhill Road, Bel Pre Road, and along several more Montgomery County streets and roads, finally ending at the home of Clem's parents on Crawford Drive in

Rockville, Maryland, after a chase of a good many miles. Speeds reached 60 to 65 miles per hour and the respondent made use of a powerful spotlight, flashing it in the rear view mirror of the Capri. All of this chase took place in the late evening hours of February 20 and according to Clem, at a time when there was appreciable traffic on the streets traversed.

On arriving at Clem's parents home, the respondent followed Clem, uninvited, into the house and threatened Clem with a criminal warrant if he did not return the Capri to his wife. The respondent called the police and an officer came to the house. A discussion then ensued in the living room of Clem's parents home between the respondent, Clem and the police officer, Corporal Burdette. During this discussion, respondent directly confronted Clem, even though the respondent knew that Clem was represented by Mr. McInerney. Ultimately the matter was resolved by Clem returning the Capri and at the time of the hearing, Clem and his wife were reconciled and living together. Corporal Burdette testified to the events that occurred in the living room of Clem's parents home and Roger Lee Weakley corroborated Clem's story with respect to Clem's attempt to secure possession of the Capri. Weakley testified further that he attempted to follow the Capri and the Datsun but lost them at Randolph Road after running at high speeds up Georgia Avenue.

None of these facts were disputed by the respondent and the panel concludes that the respondent's conduct throughout this episode was highly improper and specifically in violation of Canons 1 and 7 of the Code of Professional Responsibility and Disciplinary Rules 1-102 (A), 7-102 (A) (8) and 7-104 (A) (1). The high speed chase through heavily traveled thoroughfares and residential streets constituted illegal conduct on the part of the respondent not justified by the circumstances. His arrogant intrusion, uninvited, into the home of Mr. Clem's parents, followed by threats of criminal action against Mr. Clem, fully support the specifications of the petitioner's charges. In addition, respondent's direct confrontation and discussion

with Clem at a time when respondent knew Clem to be represented by a lawyer in the domestic relations matter, was also unprofessional conduct and a violation of the Code and Disciplinary Rules.

Based on the foregoing, the panel finds that the petitioner's allegations with respect to the Clem episode have been proven by clear and convincing evidence. The panel recommends that disciplinary action be taken against the respondent, specifically suspension from the practice of law for one year commencing on the date of the approval of this recommendation by the Court of Appeals.

/s/ David L. Cahoon

David L. Cahoon, Judge of the Circuit Court for Montgomery County, Maryland

/s/ Philip M. Fairbanks

Philip M. Fairbanks, Judge of the Circuit Court for Montgomery County, Maryland

## MEMORANDUM OF DISSENT

I concur in the findings and recommendations in the *Clem* matter. However, I strongly dissent in the conclusions of my fellow judges concerning the *Juvenile* matter.

While the majority of the Panel feels that there is not sufficient clear and convincing evidence to sustain the charges on the specific dates mentioned, I am convinced that there is overwhelming evidence to indicate that the respondent's conduct adversely reflects on his fitness to practice law, both by his involvement in marijuana and his conduct during the time a delinquent child of 16 years of age was under his supervision and control. Although there is some conflict as to specific dates, she (now nineteen years of age) is completely believable to me, and the respondent's attitude to this disciplinary proceeding and his statements

during the trial bring me to the conclusion that the Bar Association charges have been sustained.

Mr. Haupt destroyed all his records concerning his ward and client, the Juvenile. Her detailed and explicit recount of the events involving his conduct are such as to belie any perjury by her. Her testimony had not varied from the time of the first complaint and hearing by the Bar Association Grievance Committee. She has now been emancipated and is living in Florida and has no motive to continue any untruthful account of affairs and her testimony was corroborated, in part, by her father . . . and other witnesses, and the respondent's witness, . . . .

As recently reemphasized in Bar Association of Baltimore City v. Siegel (filed July 14, 1975), this "Court has the duty, since attorneys are its officers, to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary proceedings have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public."

/s/ Ralph G. Shure
_____

Ralph G. Shure, Judge of the Circuit Court for Montgomery County, Maryland

ORDERED, this 24th day of November, 1975, that a copy of these opinions and recommendation be mailed by the Clerk of this Court to the Maryland Court of Appeals with copies to petitioner and the respondent, in compliance with Rule BV11 of the Maryland Rules of Procedure.

/s/ Ralph G. Shure
_____
Ralph G. Shure, Judge

/s/ David L. Cahoon
_____
David L. Cahoon, Judge

/s/ Philip M. Fairbanks
_____
Philip M. Fairbanks, Judge